IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| REGINA V., | ) | |
| | ) | |
| Plaintiff | ) | 2:24-CV-01661-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| FRANK BISIGNANO[1], COMMISSIONER | ) | |
| OF SOCIAL SECURITY; | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant | ) | ECF NO. 7, 9 |
| | ) | |

I.      Introduction

Regina V.[2] ("Plaintiff" or "Regina") brings this action pursuant to 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3), seeking review of the final determination of the Commissioner of Social

Security ("Defendant" or "Commissioner") denying her application for disability insurance

benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 et seq., 1381, et seq. ("the Act").  Presently pending are cross

motions for summary judgment.  ECF Nos. 7, 9.  All Parties have consented to the jurisdiction of

a United States Magistrate Judge in these proceedings.  *See* 28 U.S.C. § 636(c))(1).  For the

following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 7) will be DENIED, and

Defendant's Motion for Summary Judgment (ECF No. 9) will be GRANTED.

---

[1] In accordance with Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of the Social Security Administration, is substituted as Defendant for Leland Dudek, the former Acting Commissioner.

[2] To protect the Plaintiff's privacy interests, the Court will follow the recommendation of the Judicial Conference of the United States and refer to her by first name and last initial.

II.     Procedural History

Plaintiff applied for DIB and SSI on February 23, 2022. *See* ECF No. 5-2 at 18. Plaintiff's alleged disability onset date was February 11, 2022. *Id.* These claims were denied initially on October 24, 2022, and upon reconsideration on February 26, 2023. *Id.* Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"). *Id.* The designated Administrative Law Judge ("ALJ"), Guy E. Fletcher, held a telephonic hearing on July 18, 2023. *Id.* at 18. Plaintiff was represented at the hearing by counsel, Candra Stewart, Esq. *Id.* Mr. D. T. North, an impartial vocational expert, also appeared at the hearing and testified. *Id.* at 49-51.

In a decision dated February 16, 2024, the ALJ denied Plaintiff's claims for DIB and SSI benefits. ECF No. 4-2 at 15-26. Plaintiff requested review of the ALJ's decision by the Appeals Council but review was denied on October 22, 2024, making the ALJ's decision the final decision of the Commissioner. ECF No. 4-2 at 2-4. Plaintiff filed her Complaint in this Court on December 11, 2024. ECF No. 3. Defendant filed an Answer on February 6, 2025. ECF No. 5. On March 6, 2025, Plaintiff filed a Motion and Brief in Support of Summary Judgment. ECF Nos. 7, 8. Defendant then filed a Motion for Summary Judgment and a Brief in Support on April 5, 2025. ECF Nos. 9, 10. Plaintiff filed a Reply Brief on April 18, 2025. ECF No. 14. This matter has been fully briefed and is ripe for disposition.

III.    Factual Background

A.     Hearing Transcript—General Background; Employment History

Plaintiff was born on September 22, 1965, and was fifty-seven years old at the time of the hearing.[3] ECF No. 5-3, p. 2. Plaintiff reported that from 2011 until 2021, she worked as a cashier/manager for a pizza restaurant. *See* ECF No. 5-6, p. 4. She also reported working from

---

[3] The SSA regulations define "person closely approaching advanced age" as a person who is age 50-54 years old. 20 C.F.R. § 1563(d). *See, e.g., Galloway v. Dudek*, 2025 WL 2021918, at *1 (W.D. Pa. July 18, 2025).

one month as an office clerk at a medical clinic from January until February of 2021. *Id.* In 2022, Plaintiff was in a car accident. ECF No. 5-2, at 35. She testified that, as a result of injuries she sustained from the accident, "I had to have an operation on my neck. My right arm is all numb. My hands are like needles. No feeling in my hands and in my shoulder." *Id.* at 35-36. She also reported injuries to her back. *Id.* Plaintiff testified that physicians told her "vertebrae was slightly—it was—it slid up against my spinal cord." *Id.* at 36. She had surgery in August of 2022, during which vertebrae were removed and a rod was inserted. ECF No. 5-7, at 11-12.

In July of 2023, Regina was seen for a psychological consultive examination during which she reported increased anxiety and depression since the automobile accident in 2022. *Id.* at 38-43. In November of 2023, Plaintiff was seen for a physical examination by PA-C Douglas Denney. *Id.* at 46. She described suffering from chronic headaches, neck pain, back pain and bilateral hip pain. *Id.* Plaintiff indicated that her neck pain remained chronic post-surgery, and that she was additionally experiencing pain which radiated down her right arm and into her hand. *Id.*

At the hearing, she testified that she lives with her son. ECF No. 5-2, at 40. Plaintiff testified that because of excruciating pain, she is unable to perform many household tasks such as cleaning, cooking, sweeping, and laundry. *Id.* She has not worked at all since February of 2022. *Id.* at 18. She explained that she can only comfortably stand for 20 minutes and walk no more than half of a city block before needing to sit. *Id.* at 40. She further testified that her daily activities are typically limited to "lay[ing] around, watch[ing] TV, playing on my phone, sleep." *Id.* at 41.

Plaintiff also testified that is continues to use anti-depressive medications, as prescribed, and that she sees a psychologist for therapy approximately once a month. *Id.* at 42. Anxiety prevents the Plaintiff from leaving the house, noting that before her accident, she was able to interact with people but not since. *Id.* at 44. Plaintiff's anxiety is also triggered when she gets into

an automobile. *Id.* Regina stated that her anxiety with social situations and inability to remain on her feet for long periods of time prevents her from returning to her job with the medical practice as "it would be dealing with people and being on my feet all the time." *Id.* at 45. Likewise, Plaintiff testified she could not resume her work at the pizza restaurant because she would be required to lift objects and "being on my feet all the time. I mean, I would go eight hours without a break there." *Id.*

Next, vocational expert, D. T. North was called as a witness. ECF No. 5-2, at 49-52. North classified Plaintiff's previous work as a fast food worker, based on her testimony and other evidence of record. *Id.* at 49. In characterizing Plaintiff as a fast food worker, North referenced: "DOT code 311.472-010" and noted that that classification connotes "light, unskilled [labor] with an SVP of 2." *Id.* He further characterized Plaintiff's brief work for the medical practice as akin to a "patient transporter, 355.677-014." *Id.* For these purposes, he also classified this position as "light" duty. *Id.*

The ALJ proceeded to pose a hypotheticals to North. The ALJ instructed him to consider whether a person of Plaintiff's age, education, work experience, capable of light work, and limited to no more than frequent use of the primary hand for reaching, handling, or fingering would be able to perform her past work. North responded that she could not. *Id.* at 50.

Plaintiff's counsel then asked whether, after adding further restrictions such as needing a sit/stand option and alternating between sitting/standing at a 20 minute interval, would eliminate all past work. *Id.* at 51. The vocational expert opined that it would. *Id.*

B.    Medical Treatment History

The medical record regarding Regina's impairments revealed the following. She was involved in an automobile accident on January 8, 2022. ECF No 5-7. p. 2. She refused treatment

at the scene but later presented at Stat Care Medical Services in Mesa, Arizona, complaining of back and neck pain as a residual effect of the accident. *Id.* Plaintiff was examined, prescribed pain medication, and referred for appropriate radiological studies. *Id.*

Plaintiff returned to Stat Care on February 11, 2022, subsequent to the radiological studies. *Id.* p. 4. The medical records note that her symptoms were unchanged and that she presented with moderate discomfort in her thoracic region. *Id.* Plaintiff also reported experiencing some mild memory loss and lateral paresthesia. *Id.* She experienced only minimal relief from the medications. *Id.* Plaintiff was given trigger point injunctions of Kenalog and Bupivacaine and referred for a neurological consultation. *Id.*

On March 11, 2022, Regina was seen by Dr. Timothy Luke at Valley Surgical Resources. *Id.* p. 7. Dr. Luke memorialized Plaintiff's need of surgery for:

> medical necessity for this symptomatic patient with pain associated with C2-C3 2mm disc bulge, C3-C4 1mm disc bulge with complex causing indentation of thecal sac with bilateral neural foraminal narrowing with abutment of right exiting nerve root, C4-05 3mm disc bulge with complex causing compression of thecal sac with abutment of both traversing nerve roots, bilateral neural foraminai narrowing with abutment of right exiting nerve root, C5-C6 2mm with complex causing compression of thecal sac with abutment of the right traversing nerve roots with bilateral neural foraminal narrowing with abutment of the right exiting nerve root, C6-C7 broad-based disc protrusion 5mm with complex causing compression of thecal sac and both traversing nerve roots. Compression of spinal cord without evidence of oedema/myelomalacia at present. Obliteration of both neural foramina with compression of both existing nerve roots. Grade 1 retrolisthesi of C6-C7, C7-T1 disc bulge 1mm, as evidence by MRI, dated, 02/09/2022.

*Id.* p. 7. Then, on August 11, 2022, Dr. Luke performed the following surgical procedures on the Plaintiff: Arthrodesis C6/7 interbody; anterior approach with aid. of the intraoperative microscope, C617 placement cage construct; anterior approach with aid of the intraoperative microscope,

Anterior instrumentation independent stabilization and is not considered integral to the intervertebral device: C6/7 plate and screws; anterior approach with aid of the intraoperative microscope, an Allograft placement C6/7 anterior approach, intraoperative neuromonitoring, and intraoperative use of the operative microscope. *Id.* p. 11. Plaintiff had several items implanted in her body including Cage SaberC Body: C6/7 14x17x6 and 6 degrees, instrumentation; C6/7 independent stabilization and is not considered integral to the intervertebral device: Saber C Plate; 17x6 and 3 Spikes 2 Cephalad and 1 Caudal, and Allograft: C6/7 incite Cortical Fibers 2.5 cc. Id.

On August 31, 2022, Regina underwent post-operative imaging. *Id.* p. 22. These procedures revealed the presence of fusion hardware and grade 1 spondylolisthesis.[4] *Id.* p. 12. Plaintiff was seen by Dr. Luke on September 6, 2022, and he prescribed a "spinal electrical osteogenesis stimulator" for Plaintiff's use. *Id.* p. 25. Noting the absence of any medical records from Regina's general practitioner and/or psychologist, the ALJ kept the record open for an additional forty-five days to permit supplementation. *See* ECF No. 5-2, p. 51. The ALJ indicated that "without [additional records], I don't have medically determinable impairment in terms of anxiety or depression." *Id.* p. 45.

Post-hearing, Plaintiff was seen by Dr. T. Scott Hotchkiss for a psychological examination. *See* ECF No., 5-7, p. 38. The psychological examination revealed her to be suffering from increased symptoms of anxiety and depression since her automobile accident a year and a half earlier. *Id.* p. 39. She reported difficulties with memory. *Id.* Plaintiff's Patient Health Questionnaire for Depression ("PHQ-9") was scored at 17, indicative of severe depression. *Id.* p. 40. Her responses to the General Anxiety Disorder Questionnaire ("GAD-7") amounted to a score

---

[4] Spondylolysis is defined as the dissolution of a vertebra, whereas spondylolisthesis is the forward displacement of one vertebra over another. *Blosser v. Colvin*, 2015 WL 4410084, at *2 (M.D. Pa. July 20, 2015) (citing Dorland's Illustrated Medical Dictionary 1754 (32nd ed. 2012)).

of 15, which connoted severe anxiety. *Id.* Posttraumatic Checklist for DSM-5 ("PCL-5") screenings indicated severe depression, anxiety, and PTSD. *Id.* Dr. Hotchkiss diagnosed Plaintiff to suffer from major depressive disorder (moderate), generalized anxiety disorder, PTSD (provisional) and mild neurocognitive impairment. *Id.* p. 38.

In November of 2023, Regina was seen for a physical examination. She reported symptoms of headache, neck pain, back pain, and bilateral hip pain. *Id.* p. 46. On examination, she was found to have slightly decreased range of motion in the cervical spine. *Id.* pp. 49-50.

IV.    Standard of Review

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he or she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the

Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the SSA's final decision on disability claims is provided by statute and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)6, 1383(c)(3)7. *See also Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The SSA's factual findings are judicially reviewable to determine whether they are supported by substantial evidence, and the court reviews the record as a whole. 42 U.S.C. § 405(g); 5 U.S.C. § 706. *See also Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983). Substantial evidence is defined as evidence that would satisfy a "reasonable mind" as adequate to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ must build an accurate and logical bridge between the evidence and his conclusions. *See Galloway v. Dudek*, 2025 WL 2021918, at *5 (W.D. Pa. July 18, 2025) (citations omitted). In reviewing the ALJ's, a court may not " 'substitute its judgment for that of the Agency.'" *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). Further, the ALJ cannot "simply ignore an important aspect of the problem." *Galloway*, 2025 WL 2021918, at *5. *See also Ohio v. EPA*, 603 U.S. 279, 292-93 (2024) (parallel citations omitted); *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).

If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a de novo review

of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998) (citation omitted). *See also S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).

V.     Discussion and Analysis

A.     The ALJ's Decision

The ALJ rendered an unfavorable decision on Plaintiff's claim on February 16, 2024. ECF No. 5-2, p. 18. The ALJ first concluded that Plaintiff met the insured status requirement through June 30, 2027. *Id.* p. 20. Further, the ALJ noted that she had not engaged in substantial gainful employment since February 11, 2022, her alleged onset date. *Id.* At Step 2 of the sequential analysis, the ALJ found Plaintiff suffered from a single severe impairment: degenerative disc disease.[5] *Id.* (citing 20 C.F.R. § 416.920(c)). At Step Three, the ALJ found that she did not meet or equal any of the Listings. *Id.* p. 22. At Step Four, the ALJ found that she retained the residual

---

[5] Also at Step 2, the ALJ assessed Plaintiff's psychological impairments. ECF No. 5-2, p. 21. The ALJ applied a "special technique" to evaluate mental impairments. *See, e.g., Deanna S. v. Dudek, Acting Comm'r of the Soc. Sec. Admin.*, 2025 WL 1510659, at *6 (S.D.W. Va. May 7, 2025), *report and recommendation adopted sub nom. Deanna S. v. Bisignano*, 2025 WL 1507022 (S.D.W. Va. May 27, 2025). Here, the ALJ concluded that Regina's mental impairments (major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD") and mild neurocognitive impairment) did not cause more than a minimal limitation on her ability to perform basic mental work and thus, were non-severe. *Id.* The ALJ provided a detailed analysis of the relevant criteria in reaching her determination that her mental impairments—considered singly and in combination—did not meet or medically equal the criteria of listings set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Paragraph B Criteria"). *Id.* The ALJ explained that the record showed that Plaintiff had mild limitations in all four broad functional areas of mental functioning, or "Paragraph B" criteria, but that because there were no more than mild limitations in these areas, these impairments were considered mild and non-severe. Indeed, the ALJ specifically noted: "the medical records in this care are minimal and the records available contain no evidence of any ongoing mental health treatment, no evidence of mental health counseling, and no psychiatric hospitalizations." *Id.* p. 21. Thus, the ALJ concluded that any limitations caused by Regina's mental impairments were "so slight that they do not cause any measurable loss of function in the mental ability to understand, remember, or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work setting" *Id.* Accordingly, the ALJ acknowledged that the Plaintiff's mild limitations would not be reflected in his residual functional capacity assessment. The ALJ then fashioned an RFC that included no limitations for Plaintiff's mild impairments in mental functioning. *Id.* Plaintiff does not appeal this determination.

functional capacity to perform the full range of light work.  *Id.*  Further, the ALJ also found that the Plaintiff has no past relevant work.

At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ concluded that Plaintiff has not been disabled within the meaning of the Act and denied both DIB and SSI benefits.  *Id.* p. 26.

Plaintiff raises two arguments on appeal.  First, she contends that the ALJ failed to properly evaluate the medical opinion of the physician assistant who examined her post-hearing, Physician Assistant Denney.  ECF No. 8, p. 10.  Specifically, she argues that the ALJ failed to articulate how he considered the consistency factors when determining the persuasiveness of the PA's opinion, particularly as it relates to Plaintiff's alleged work-preclusive limitations.  *Id.*

Second, Plaintiff argues that the ALJ's persuasiveness finding is "not based on substantial evidence."  *Id.*  She contends that this alleged deficiency was not harmless because the ALJ's RFC did not adequately reflect her work-preclusive limitations.  *Id.* p. 12.

B.     The ALJ Provided a Sufficient and Supported Explanation for Discounting the Medical Opinion of PA Denney.

After examining Regina post-hearing, Denney concluded she suffered from "chronic neck pain, chronic headaches, back pain, and bilateral hip pain.  ECF No. 5-7, p. 46.  He also concluded that Plaintiff could only stand for two hours out of an eight-hour work day.  *Id.* p. 51.  Additionally, Denney determined that Regina could lift/carry 21-50 pounds on occasion and 11-20 pounds with more frequency.  *Id.*  She could also sit for four hours and walk for two hours during an eight-hour work day.  *Id.*  Denney also noted that Plaintiff could climb ladders, scaffolds, stairs, stoop, kneel, crouch, and crawl.  *Id.*  She also was found able to tolerate exposure to unprotected heights,

operating a motor vehicle, loud (heavy traffic) noises, and could, on occasion, be exposed to heights, operate a motor vehicle, and tolerate exposure to other substances such as dust, fumes, and pulmonary irritants. *Id.* The ALJ disregarded this opinion. ECF No. 5-2 p. 25. He concluded that Denney's determinations were not supported by the record and were inconsistent given the larger medical record.

Plaintiff first argues that the ALJ's consideration of the opinion provided by PA Denney post-hearing was flawed because he erred in his consistency analysis. This court finds that the ALJ sufficiently addressed the consistency factors.

Because Plaintiff filed her disability claim after March 27, 2017, the ALJ was required to apply new regulations when evaluating medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. Under new regulations, the ALJ need not defer to or give any specific evidentiary weight to medical opinions from treating sources. *Id.* at §§ 404.1520c(a), 416.920c(a). Rather, when an ALJ considers medical opinions in the record, new governing regulations indicate that supportability and consistency are the two most important factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, those are the only two factors an ALJ must consider explicitly. *Id.* Supportability refers to the objective medical evidence and accompanying explanation that the medical source provides to justify those medical opinions. *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2). This articulation standard does not conflict with the enabling statute. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

As to consistency, the ALJ's analysis adequately addressed the opinion's consistency. The ALJ was not required to specify whether PA Denney's opinion was consistent with the overall

medical record. However, he was required to provide a sufficient explanation of his consistency finding that permits this court to conduct a meaningful review. *See Fargnoli,* 247 F.3d at 42; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). He did so here, when he stated that Denney's opinion was inconsistent with other aspects of the medical record, which notably revealed the absence of ongoing medical treatment post spinal surgery. Therefore, the court finds no error in the ALJ's consistency analysis of PA Denney's opinion. *See, e.g., Christine F. B. v. Bisignano*, 2025 WL 1830603, at *5 (E.D. Pa. June 30, 2025).

On appeal, Plaintiff acknowledges that the ALJ adequately addressed supportability but contends his consistency analysis was impermissibly "cursory" and "terse." ECF No. 8, at 11–12 (citing *Prodin v. Kijakazi*, 2022 WL 973703, at *4 (W.D. Pa. Mar. 31, 2022)). As shown above, the ALJ explained that Denney's opinion was inconsistent because Denney found limitations that were not consistent with the evidence as a whole. For certain, ALJs "must *consider* a range of factors" when they weigh medical opinions, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original). For cases such as this one, which are filed on or after March 27, 2017, the regulations provide that "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability." 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 416.920c(b) and (c). *See also Brown v. Comm'r of Soc. Sec.*, 2025 WL 1284775, at *1 (W.D. Pa. May 2, 2025). "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Plaintiff points to no specific medical findings that the ALJ overlooked. Instead, she offers only the broad argument that his consistency discussion was inadequate. That type of allegation is insufficient. Here, the ALJ properly analyzed the consistency of Denney's opinion and reached the reasonable conclusion that it was not persuasive. ECF No. 5-2, p. 26. The ALJ specifically found that the lack of record evidence of ongoing treatment post-surgery was inconsistent with the PA's conclusions relating to the limitations he placed on Regina's abilities. The ALJ used this absence of evidence from the rest of the record to show inconsistency with PA Denney's opinion. This was a proper consistency analysis. *See, e.g., Prinzi v. Comm'r of Soc. Sec.*, 2024 WL 4931946, at *1 (W.D. Pa. Dec. 2, 2024) (citing *Cook*, 2021 WL 1565832, at *3 (stating "consistency relates to the relationship between a medical source's opinion and other evidence within the record."). As shown above, the ALJ explained that this opinion was inconsistent with the evidence because it found limitations that the evidence as a whole did not demonstrate. While Plaintiff contends this analysis was insufficient because the ALJ did not elaborate or cite any of the inconsistent evidence, the ALJ explained elsewhere in the opinion that the evidence showed that she could complete many daily activities and had not received any treatment post-surgery over the last few years. This explanation is sufficient to facilitate meaningful judicial review. *See e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that an ALJ's decision must be "read as a whole").

Moreover, the law imposes no obligation on an ALJ to provide the level of detail Plaintiff seeks here. Under the Commissioner's regulations, it is enough that the decision be explained in a manner that allows a subsequent reviewer to follow the reasoning. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017). The United States Supreme Court has emphasized that an adjudicator's reasoning need not be

"elaborate or even sophisticated," provided the rationale is "reasonably discernible." *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 302 (2015); *see also Garland v. Ming Dai*, 593 U.S. 357, 369 (2021). Likewise, the Third Circuit has repeatedly explained that the substantial evidence standard is deferential, requiring only that the ALJ's path of reasoning be traceable, not that it be exhaustively detailed. *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (the ALJ "is not required to supply a comprehensive explanation for the rejection of evidence" if the reviewing court can discern the rationale); *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (the ALJ must simply identify what evidence was accepted and what was rejected, and why). Thus, it is Plaintiff's burden to highlight concrete evidence that undermines the ALJ's conclusions, rather than to rely on generalized assertions of error. *See Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016).

      C.     Substantial evidence supports the ALJ's conclusion that Regina was able to perform the mental demands of her past relevant work.

Next, Plaintiff argues that the ALJ's conclusion she was able to perform the mental demands of her past relevant work ("light," "unskilled," "SVP 2" work) was not supported by substantial evidence. *See* ECF No. 8, p. 15. She faults the ALJ for not accounting for her mild mental limitations when he formulated her residual functional capacity ("RFC"). *Id.* "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). At the hearing, the ALJ was concerned that there was no expert psychological functional assessment in the record, specifically noting, "I'll just state the obvious … I don't think we have anything in the file from her primary care doctor, or from the psychologist, or from the therapist." *See* ECF No. 5-2, p. 45. Without such records, the ALJ stated he was lacking a "medically determinable impairment in terms of anxiety or depression." *Id.* As a result, the ALJ

left the record open for an additional 45 days for the submission of such reports. *Id*. When no such reports were submitted, the ALJ ordered Regina to undergo a psychological consultative exam.

Dr. T. Scott Hotchkiss performed the psychological exam. *See* ECF No. 5-7, p. 38. Although Hotchkiss concluded that Regina suffered from conditions and disorders such as depression, anxiety, PTSD, and mild neurocognitive disorders, Hotchkiss did not express an opinion whether those conditions affected Plaintiff's ability to work or identify any functional work-related limitations. *Id*. pp. 38-43. Thus, the psychological records Plaintiff points to are treatment notes which do not contain an opinion as to what she can still do despite her impairments or whether she meets or equals a listing. *See id*. Indeed, the ALJ expressly discussed this in his decision, noting that Dr. Hotchkiss did not specify any functional work-related limitations. ECF No. 5-2, p. 22. Given that, the ALJ did not undertake a persuasiveness analysis indicating that she had considered such statements but not treated them as medical opinions. *See, e.g., Johnson v. Kijakazi*, 2023 WL 2500367, at *1 (W.D. Pa. Mar. 14, 2023).

Here, the ALJ reviewed all of the relevant evidence including the medical records, psychological records, and Plaintiff's own description of her limitations. He relied on the evidence submitted in reaching his determination that she could perform light work sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and this determination was accompanied by a thorough explanation and a meaningful discussion of the evidence. Accordingly, the Court finds that the ALJ's conclusions are substantially supported by the evidence. Absent from the records is evidence of ongoing mental health treatment, mental health counseling, or psychiatric hospitalization. Nothing in the records supports severe or prolonged limitations due to depression, anxiety, or any other psychological disorder during the relevant times.

The Court is not persuaded by Plaintiff's contention that the ALJ erred in relying on the consultative psychological evaluation, which did not delineate any specific work-related restrictions. The ALJ is charged with assessing a claimant's RFC based on the entirety of the record, and need not adopt any medical opinion verbatim. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361–62 (3d Cir. 2011). Where, as here, a consultative examiner provides narrative findings but declines to identify functional limitations, courts within this Circuit have recognized that the omission may reasonably be interpreted as an indication that the claimant suffers no disabling mental restrictions. *See Rutherford v. Barnhart*, 399 F.3d 546, 553–54 (3d Cir. 2005); *Titterington v. Barnhart*, 174 Fed. Appx 6, 11 (3d Cir. 2006); *Kersey v. Comm'r of Soc. Sec.*, 2016 WL 1271280, at *6 (W.D. Pa. Mar. 31, 2016). Judicial review is confined to determining whether the ALJ's RFC finding is supported by substantial evidence, not whether this Court would have reached a different conclusion. *Rutherford*, 399 F.3d at 552.

Plaintiff argues that Dr. Hotchkiss' report found her to be suffering from depression, PTSD, and anxiety. *See* ECF No. 14, p. 6; ECF No. 5-7, p. 38. But merely pointing to a diagnosis without identifying any additional functional limitations not already included in the RFC is insufficient. Further, she does not provide any explanation as to why this evidence undermines the ALJ's treatment of the psychologist's opinions or otherwise requires remand. Notably, "[a] diagnosis alone ... does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 Fed. Appx 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). *See also Phillips v. Barnhart*, 91 Fed. Appx 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under

the Act"). The ALJ need only include "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554

Because the ALJ here acknowledged the consultative opinion, explained the weight afforded to it, and reasonably concluded that the absence of any stated limitations was consistent with the broader evidentiary record, the ALJ's decision finding the report unpersuasive was supported by substantial evidence. The Court finds no error.

VI.    Conclusion

For the reasons explained above, the Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ did not err in conducting the consistency analysis. Further, it was not error for the ALJ to conclude that, despite her severe mental impairments, the Plaintiff has the residual capacity to perform some jobs available in the national economy and is therefore not disabled. The ALJ's decision will be AFFIRMED.

For the reasons set out above, the Court concludes Plaintiff's appeal of the Commissioner's decision is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

DATED this **26**th day of **September**, 2025.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

17